STATE, Respondent, *v.* GUSTIN, Appellant.

(No. 6,521.)

(Submitted September 26, 1929. Decided October 18, 1929.)

[281 Pac. 351.]

*Mr. Fred C. Gabriel,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. L. V. Ketter,* Assistant Attorney General, for the State, submitted a brief; *Mr. Ketter* argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

Defendant was convicted of the larceny of one gray mare branded Lazy M Lazy S quarter circle on the left thigh, the property of Albert D. Ide; his motion for a new trial was denied and he appeals from the judgment and the order denying a new trial. The sole question presented for determination is whether there is sufficient evidence to justify the verdict.

The rule is settled in this jurisdiction that on appeal the review of the evidence by this court is limited to an examination of the record to determine whether there is any substantial evidence to justify the verdict. (*State* v. *Foster*, 26 Mont. 71, 66 Pac. 565; *State* v. *McCarthy*, 36 Mont. 226, 92 Pac. 521; *State* v. *Popa*, 56 Mont. 587, 185 Pac. 1114; *State* v. *Slothower*, 56 Mont. 230, 182 Pac. 270.)

The evidence discloses that in 1920 one Lafond sold a gray mare and two gray colts, branded AJ on the right jaw to William Nisson. In 1922 Nisson sold the oldest of the two colts to one Monroe, and he in turn sold it to Ide. Ide's horses ranged around German Cookingham's place, about nine miles south of Bowdoin and four miles from defendant's place. His horses were branded Lazy M Lazy S quarter circle on the left thigh. In 1923 Ide left the state and turned his horses over to Cookingham who has had charge of them since that time. Cookingham, after receiving the horses, branded the gray mare with the Ide brand. The gray mare, alleged to have been stolen, was used by Cookingham and his family as a saddle-horse and was last seen at his place the latter part of March, 1928. On April 28 the carcass of an animal was found in a deep coulee in a big washout about three miles from Cookingham's place and a quarter of a mile from defendant's place. The hide had been removed up to the jaws and back of the ears. The AJ brand was found on the right jaw and a bullet hole, with discolored hair around it, was found in the head.

On April 21 defendant shipped from Bowdoin to the Pacific Hide & Fur Company at Havre, four green unsalted horse

hides. The sheriff of Hill county found the hides in a boxcar at Havre. One of the hides was gray and bore the Ide brand; there was also a scar or blotched brand on the left shoulder, which witnesses for the state testified was so blotched that it could not be read. Witnesses positively identified the carcass, by the peculiarly shaped head and feet and a bridle-bit scar on the tongue; they likewise as positively identified the hide as having been taken off the Ide mare, by the brand, the color and other distinguishing marks.

There is also testimony that about four days before the hides were shipped by defendant he was seen coming from the direction of the coulee, and that he had blood on his pants and appeared to have a gun in a holster in his saddle pocket.

One of the hides found at Havre by the sheriff belonged to Henry Black, who procured a warrant for defendant's arrest. Later, in company with a deputy sheriff, Black visited defendant's place. He testified that upon that occasion defendant said: "When you found out I had shipped your hide, why didn't you come to me as a neighbor would or should and I would have given you two or three horses." The same witness further testified: "Mrs. Gustin also spoke to me. Mr. Gustin was present at the time. She said she would like to ask me one thing. * * * What are we going to do if your horses come and bother us, and I says, 'There is no herd law here that I know of and I think my horses have got a right to run on this range,' and she says they crawled through their fences." Defendant made no reply to the statement made by his wife.

Defendant admitted shipping the hides and testified that the hide in question was taken off a horse found dead on Beaver Creek, several miles from his place; that the animal had been dead three or four days when he skinned it; that he did not see the Ide or the AJ brands but did see what he identified as the YR bar brand on the left shoulder; that the horse belonged to Nisson and he (defendant) had advised Nisson that he had one of his hides. He also testified that two other of the hides shipped by him were taken off of horses he had found on the range.

Nisson, a witness for defendant, testified that he bought a gray mare and two colts from Lafond and branded them with his brand, YR bar on the left shoulder; one of these mares was sold to Monroe and his brand vented at the time of the sale, with the YR brand underneath and a little ahead of the original brand; that he was the owner of the animal from which the hide was taken; that in April, 1928, he met defendant who advised him that he (defendant) had "one of my hides in his wagon. He didn't say that it was this one. He told me he got it on Beaver Creek." Nisson did not examine the hide and made no further inquiry concerning the matter. He claimed ownership of the mare by virtue of the brand on the left shoulder which he asserted was a YR bar.

In rebuttal, R. C. Timmons, a veterinary surgeon, testified that the hides "were butchered hides," and that the hide in question would not have been in the condition he found it at Havre, if taken from a horse which had been dead three or four days.

We are of opinion that there is ample substantial evidence to support the verdict. The jury had the advantage of seeing the witnesses on the witness-stand, · of observing their demeanor, their apparent candor or lack of it, of examining the hide and other exhibits offered in evidence, and we will not substitute our judgment upon the weight of the evidence or the credibility of the witnesses for that of the jury. Accordingly the judgment is affirmed.

Mr. Chief Justice Callaway and Associate Justices Matthews, Galen and Angstman concur.